964 So.2d 785 (2007)
Onterrious TILLMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1779.
District Court of Appeal of Florida, Fourth District.
September 12, 2007.
*786 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The appellant challenges his conviction for aggravated fleeing and eluding and resisting without violence. Before trial, the court ruled that the contents of two BOLOs involving an armed kidnapping could come into evidence to show its effect on the police officers who encountered appellant based upon the BOLOs. Because the contents of the BOLOs were inadmissible and prejudicial, we reverse.
Fort Lauderdale police officers received two BOLO reports involving an armed kidnapping in which a white Dodge Intrepid was used. The suspect was reported as possessing a large caliber firearm. One officer spotted a vehicle matching the description, which included a tag number, parked in front of a pay phone. The officer called for backup, and another officer and his K-9 unit arrived. They observed appellant at the pay phone making a call. Drawing their weapons, they ordered appellant to the ground or to place his hands in the air, as each officer apparently shouted different commands. Appellant appeared to ignore them and went to the vehicle, rummaging around in the front seat.
Fearing that appellant was reaching for a firearm, the officers ordered him out of the vehicle. Appellant went back to the pay phone where he had left his keys. Because he was not obeying their commands, the officers let the dog loose, at which point appellant ran to the vehicle, closed the door, and started to drive off. One of the officers reached through the window and hit appellant several times. As appellant backed up, the officers had to jump out of the way. They each began firing at the vehicle.
According to the officers appellant drove away at a high speed and they pursued. Appellant testified that he was not speeding and he did not see the officers pursuing him. He hit a median and crashed the vehicle because his eyes were burning with pepper spray that one of the officers had used and because of the broken glass from the shot out windows. When the officers arrived, he was not in the car. They searched for him and later cornered him in the backyard of a residence. Eventually, with the use of the dog, they were able to detain him.
*787 The state charged appellant with two counts of aggravated assault on a law enforcement officer, one count of aggravated fleeing or eluding, and one count of resisting without violence. Prior to trial, the state moved in limine to admit the contents of the BOLOs to show their effect on the conduct of the officers in being as aggressive as they were with the appellant. The trial court granted the motion, because the court concluded that it was necessary to show the officers' state of mind. The court allowed the state to discuss the contents of the BOLOs in opening statement. While it offered to give a "curative instruction" explaining that the jury should not consider the contents for the truth of implicating appellant in an armed kidnapping, it would not give such an instruction until someone testified about the BOLOs.
In opening statement, with respect to the BOLOs the prosecutor asked the jury:
[T]o consider the contents of the call to consider what was going on in the police officers' minds when they heard the call. . . . I'm not asking you to consider the calls as a conduct Mr. Tillman necessarily committed. You will find that conduct was uncharged. I ask you to consider it to the effect it had of the police officers hearing the information over the police radio.
As expected, the officers testified to the contents of the BOLOs and that appellant and his vehicle matched the description of the person suspected of the armed kidnapping. Thus, the officers approached appellant with guns drawn, fearing violence from appellant whom they suspected had a large caliber firearm as reported in the BOLOs.
In response, appellant testified that he did not have a firearm and ignored the officers because he had not done anything wrong such that they would want to stop him. When the officers drew guns on him, he was afraid and became more afraid when the dog was let loose, as he had a fear of dogs. He did attempt to get away, but he said he did not drive with excessive speed.
In closing argument, the state argued:
We know that information goes out over the radio and within minutes and a couple of blocks, Officer Selfo sees the car that matches the description, sees an individual at a pay phone that matches the description.
This is what the, what is going through the officer's mind. They were investigating a possible crime.
Defense tells you Mr. Tillman had no gun. You know what? We don't know that. The reason why we don't know that is he doesn't stay around to let the police do their job and find out. Maybe there wasn't a gun in the car. Maybe this was a mistake. And if they would have been able to talk to him and searched the car, he may not be sitting here or maybe there was a gun in the car, maybe? We don't know. Why? Because of his actions. Maybe there was a gun in the car and we would be talking about a different case altogether.
The jury convicted appellant of aggravated fleeing and eluding and resisting arrest. It acquitted him of the counts of aggravated assault on a law enforcement officer. As a result of prior convictions, the court sentenced appellant as a habitual offender to thirty years in prison. This appeal follows.
The state claims the issue is not preserved because Tillman made no objections at trial. Tillman acknowledges that he did not object to the officers' testimony or the state's closing argument referring to Tillman's involvement in an armed kidnapping, shooting, and firearm possession. However, the trial court made a definitive *788 ruling on the record admitting evidence, meaning that Tillman need not have renewed his objection to preserve his claim of error for appeal. See Stokes v. State, 914 So.2d 514, 516 n. 2 (Fla. 4th DCA 2005); § 90.104(1)(b), Fla. Stat. Although the trial court offered to give "curative instructions" when the officers testified to the BOLOs, it allowed the state to comment on the BOLOs in opening argument. Thus, the damage of exposing the jury to the contents of the BOLOs began with the opening statement, where no curative instruction was allowed by the court. Thus, we consider the issue preserved for appeal.
An out-of-court statement which is offered for a purpose other than proving the truth of its contents is admissible when the purpose for which the statement is being offered is a material issue in the case. State v. Baird, 572 So.2d 904, 907 (Fla.1990). A police officer's state of mind is generally not a material issue in a criminal prosecution. Id. When the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to an arrest, the need for the evidence is slight and the likelihood of misuse is great. Id. at 908 (citing Harris v. State, 544 So.2d 322, 324 (Fla. 4th DCA 1989)). See also Conley v. State, 620 So.2d 180, 183 (Fla.1993). "[T]he contents of a BOLO are generally inadmissible in that they contain incriminating hearsay details unnecessary to establish a logical sequence of events." Shaffer v. State, 619 So.2d 409, 410 (Fla. 4th DCA 1993).
In Saintilus v. State, 869 So.2d 1280 (Fla. 4th DCA 2004), noting that the state frequently attempts to admit the contents of hearsay based upon state of mind, Judge Farmer wrote:
In spite of substantial authority condemning this attempt to adduce prejudicial hearsay, the state often persists in offering this kind of hearsay to explain the "state of mind" of the officer who heard the hearsay, or to explain a logical sequence of events during the investigation leading up to an arrest. This type of testimony occurs with the persistence of venial sin. The state's insistence on attempting to adduce this particular brand of hearsay requires trial judges to be constantly on their guard against it.
Id. at 1282. Moreover, such evidence is not admissible to show a logical sequence of events. As the supreme court said in Keen v. State, 775 So.2d 263, 274 (Fla. 2000):
[T]his Court clearly instructed in Baird, reaffirmed in Conley, and confirmed in Wilding [v. State, 674 So.2d 114 (Fla. 1996)] that an alleged sequence of events leading to an investigation and an arrest is not a material issue in this type of case. Therefore, there is no relevancy for such testimony to prove or establish such a nonissue. When the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence seeks to clothe such hearsay under a nonhearsay label. See § 90.801(1)(c), Fla. Stat. (1999); Wright v. State, 586 So.2d 1024 (Fla.1991) (holding that where the only relevance of an out-of-court statement is to prove the truth of the matter asserted it is hearsay and is not rendered admissible when the non-hearsay purpose is not relevant).
Here, the contents of the BOLOs were not admissible to prove a material issue in the case. Although the trial court stated that they were admissible to show their effect on the state of mind of the officers, the state of mind of the officers was not a material issue of any offense charged. *789 Even though the state suggests that it was necessary to show that the officers were engaged in a legal duty, the mere statement that they were investigating a BOLO report would have sufficed to provide them with the authority to approach appellant.
Moreover, the state used the BOLO information to suggest in closing that appellant may have had a gun, which was the reason he fled the scene. This is similar to the use of a police dispatch in Conley v. State, 620 So.2d 180 (Fla.1993), to prove that the appellant possessed a gun. There, an officer testified to the contents of the dispatch report that he "received the call in reference to a man chasing a female down the street. . . . The man supposedly had some type of gun or rifle." Id. at 182. In closing argument, the prosecutor argued that this statement, combined with the alleged victim's testimony, proved that appellant carried a rifle during the criminal episode.
The supreme court found that regardless of the purpose for which the state claimed it offered the evidence, the state used the evidence to prove the truth of the matter asserted. In so doing, the statement constituted hearsay with no exception. The court further found that even if the testimony was not used to prove the truth of the matter asserted, the contents of the statement were not relevant to establish a logical sequence of events, nor was the reason why officers arrived at the scene a material issue. The court concluded that the inherently prejudicial effect of the statement outweighed the probative value of such evidence.
Based upon the wealth of authority in which the courts have consistently held such hearsay statements inadmissible, the trial court erred in admitting the BOLOs which suggested not only that appellant was a suspect in an armed kidnapping but that he fled the scene because he had a firearm. The reasons proffered for its admission, namely the officers' state of mind or to show a logical sequence of events, have been rejected in prior cases, and we reject their application here also.
We cannot find this error harmless beyond a reasonable doubt, even though the trial court offered to give curative instructions. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The state was allowed to alert the jury, without curative instruction, to the BOLOs in opening statement. The prosecutor did not state that appellant had not committed the armed kidnapping; he simply told the jury that appellant had not been charged with that crime. Further, in closing the prosecutor used the firearm aspect of the BOLOs to suggest to the jury that appellant fled because of a firearm in the car. Appellant did flee the scene, but he testified that he did not do so at an excessive rate of speed or in a reckless manner. The admission of the BOLOs may have affected the jury's assessment of his statement.
We also reject the notion that an offer to give multiple "curative instructions" telling the jury not to consider the evidence for the truth of the matter asserted but allowing the state to place into evidence the uncharged and highly prejudicial conduct is sufficient to cure the error. The evidence of the BOLOs did not relate to a material issue in the case. Therefore, it was inadmissible, and the curative instruction offered by the trial court would still have permitted the jury to consider irrelevant and prejudicial information. We therefore reverse for a new trial.
KLEIN and HAZOURI, JJ., concur.